DEVIN M. SENELICK (State Bar No. 221478)
E-Mail:   dsenelick@health-law.com
JONATHAN H. SHIN (State Bar No. 287602)
E-Mail:   jshin@health-law.com
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067-2517
Telephone: (310) 551-8111
Facsimile: (310) 551-8181

Attorneys for ENTERAL PRODUCTS,
LLC and TWIN MED, LLC

**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ENTERAL PRODUCTS, LLC, a California limited liability company; TWIN MED, LLC, a Delaware limited liability company,<br><br>       Plaintiffs,<br><br>      vs.<br><br>MEDS DIRECT RX OF NY, LLC, a New York limited liability company; MEDS DIRECT RX OF TN, LLC, a Tennessee limited liability company; MEDS DIRECT RX OF FL, LLC, a Florida limited liability company; PHARMA HOLDINGS US, LTD., a Texas limited partnership, and DOES 1 through 25, inclusive,<br><br>      Defendants. | CASE NO. 16-CV-00915<br><br>**COMPLAINT FOR:**<br><br>1.  **BREACH OF CONTRACT;**<br>2.  **ANTICIPATORY BREACH OF CONTRACT;**<br>3.  **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**<br>4.  **INTENTIONAL FRAUD / MISREPRESENTATION / PROMISSORY FRAUD; AND**<br>5.  **NEGLIGENT MISREPRESENTATION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial Date:     None Set |

1199982.1

COMPLAINT

Plaintiffs Twin Med, LLC ("TwinMed") and Enteral Products, LLC ("Enteral," together with Twin Med, "Plaintiffs"), hereby allege as follows:

## I.  INTRODUCTION

1.      This case involves Defendants' failure to fulfill its contractual obligation to Plaintiffs to make two (2) purchase orders of diabetic test strips worth no less than $330,000, exclusive of interest and penalties.  Based on representations made by the parties, Plaintiffs anticipate that Defendants will further breach its contractual obligation to make four (4) additional purchase orders of goods worth no less than $990,000, and its contractual obligation to make twelve (12) additional purchase order of goods at Plaintiffs' option, worth no less than $1,980,000, exclusive of interest and penalties.

2.      Plaintiffs, which are in the business of selling certain medical supplies, has the present, and future capacity to meet all orders which were anticipatorily breached by Defendants.  As such, Plaintiffs are lost volume sellers, entitled to recover all profits lost by Defendants' breach and repudiation of the agreement.  Each order, as defined by the agreement, would allow Plaintiffs to collect profits in the amount of no less than $62,100.  Accordingly, Plaintiffs' expected benefit had Defendants not breached the agreement amounts to no less than $1,117,800, exclusive of interest and penalties.

## II.  PARTIES

3.      Plaintiff TwinMed is, and at all relevant times was, a Delaware limited liability company in the business of medical supply distribution with its principal place of business in Santa Fe Springs, California.  TwinMed's sole member is Twin Med Acquisition Corporation, which is, and at all relevant times was, a Delaware corporation with its principal place of business in Sante Fe Springs, California.  As such, both Twin Med Acquisition Corporation and TwinMed are citizens of the States of California and Delaware.  TwinMed is authorized to conduct and is conducting business in the State of California.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

4. Plaintiff Enteral is, and at all relevant times was, a California limited liability company in the business of medical supply distribution, with its principal place of business in Santa Fe Springs, California. Enteral's sole member is Plaintiff TwinMed, which is a citizen of the States of California and Delaware. As such, Enteral is a citizen of the States of California and Delaware. Enteral is authorized to conduct and is conducting business in the State of California.

5. Plaintiffs are informed and believe that Defendant Meds Direct Rx of TN, LLC ("Meds Direct TN") is, and at all relevant times was, Tennessee limited liability company which provides mail-order medical supply distribution and pharmacy services, with its principal place of business is in Nashville, Tennessee. Plaintiffs are informed and believe that Meds Direct TN conducts business in the state of California. Plaintiffs are informed and believe that Meds Direct TN's sole member is Rockaway Investments, Inc., a Florida corporation with its principal place of business in Hollywood, Florida. As such, both Rockaway Investments, Inc. and Meds Direct TN are citizens of the State of Florida. Plaintiffs are informed and believe that Meds Direct TN is not a citizen of the States of California or Delaware.

6. Plaintiffs are informed and believe that Defendant Meds Direct Rx of FL, LLC ("Meds Direct FL") is and at all relevant times was, a Florida limited liability company which provides mail-order medical supply distribution and pharmacy services, with its principal place of business in Deerfield Beach, Florida. Plaintiffs are informed and believe that Meds Direct FL conducts business in the state of California. Plaintiffs are informed and believe that Meds Direct FL's sole member is Rockaway Investments, Inc., a Florida corporation with its principal place of business in Hollywood, Florida. As such, both Rockaway Investments, Inc. and Meds Direct FL are citizens of the State of Florida. Plaintiffs are informed and believe that Meds Direct FL is not a citizen of the States of California or Delaware.

7. Plaintiffs are informed and believe that Defendant Meds Direct Rx of NY, LLC ("Meds Direct NY," together with Meds Direct TN and Meds Direct FL,

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  "Meds Direct") is, and at all relevant times was, a New York limited liability

2  company which provides mail-order medical supply distribution and pharmacy

3  services, with its principal business in Brooklyn, New York.  Plaintiffs are informed

4  and believe that Meds Direct NY conducts business in the state of California.  A

5  search for publicly available information on the New York State Department of

6  State, Division of Corporations website reveals that the New York State Department

7  of State, Division of Corporations "does not require or maintain information

8  regarding the names and addresses of members or managers of nonprofessional

9  limited liability companies."  A further search of publicly available information did

10  not reveal the identity of the current member or members of Meds Direct NY.

11  Plaintiffs hereby allege that this information is in the control and possession of

12  Meds Direct NY.  In any event, Plaintiffs are informed and believe that Meds Direct

13  NY is not a citizen of the States of California or Delaware.

14      8.      Plaintiffs are informed and believe that Pharma Holdings US, Ltd.

15  ("PHUS") is, and at all relevant times was, a Texas limited partnership, with its

16  principal place of business located in the State of Texas, in the business of owning,

17  managing, administrating, operating pharmacies located throughout the country.

18  Plaintiffs are informed and believe that the sole general partner of PHUS is Cary K.

19  Rossel, an individual who resides in the state of Texas.  As such, PHUS is a citizen

20  of the state of Texas.  Plaintiffs are informed and believe that PHUS is not a citizen

21  of the States of California or Delaware.

22      Defendants Meds Direct and PHUS may be referred to herein, collectively, as

23  "Defendants."

24      9.      The true names or capacities, whether individual, corporate, associate

25  or otherwise of Defendants Does 1 through 25, inclusive, are unknown to Plaintiffs,

26  who therefore sue said Defendants by such fictitious names.  Plaintiffs are informed

27  and believes and thereon allege that each of the Defendants designated herein as a

28  Doe is legally responsible in some manner for the events and happenings herein

1   referred to and legally and proximately caused injury and damages to Plaintiffs as

2   herein alleged.  At such time as Plaintiffs become aware of the true names and

3   capacities of such Defendants, it will seek leave of Court to amend this Complaint

4   accordingly.

5       10.    Plaintiffs are informed and believe that at all relevant times each of the

6   Defendants was the agent and employee of each of the remaining Defendants, and in

7   doing the things hereinafter alleged was acting within the course and scope of such

8   agency and employment.

9                   **III.    JURISDICTION AND VENUE**

10      11.    For purposes of establishing diversity jurisdiction under 28 U.S.C.

11  § 1332, Plaintiff TwinMed is a citizen of the states of California and Delaware.

12  TwinMed's sole member is Twin Med Acquisition Corporation, which is a

13  Delaware corporation with its principal place of business in the State of California.

14  Therefore, both Twin Med Acquisition Corporation and Plaintiff TwinMed are

15  citizens of the States of California and Delaware.

16      12.    For purposes of establishing diversity jurisdiction under 28 U.S.C.

17  § 1332, Plaintiff Enteral is a citizen of the states of California and Delaware.

18  Enteral's sole member is Plaintiff TwinMed, which is a citizen of the States of

19  California and Delaware for the reasons set forth above.  Therefore, both TwinMed

20  and Enteral are citizens of the States of California and Delaware.

21      13.    For purposes of establishing diversity jurisdiction under 28 U.S.C.

22  § 1332, Plaintiffs are informed and believe that Defendant Meds Direct TN is, and at

23  all relevant times was, a citizen of the State of Florida.  Plaintiffs are informed and

24  believe that Meds Direct TN's sole member is Rockaway Investments, Inc., a

25  Florida corporation with its principal place of business in Hollywood, Florida.  As

26  such, Plaintiffs are informed and believe that both Rockaway Investments, Inc. and

27  Meds Direct TN are citizens of the State of Florida.  Plaintiffs are informed and

28  believe that Meds Direct TN is not a citizen of the States of California or Delaware.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

14.     For purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs are informed and believe that Defendant Meds Direct FL is, and at all relevant times was, a citizen of the State of Florida.  Plaintiffs are informed and believe that Meds Direct FL's sole member is Rockaway Investments, Inc., a Florida corporation with its principal place of business in Hollywood, Florida.  As such, Plaintiffs are informed and believe that both Rockaway Investments, Inc. and Meds Direct FL are citizens of the State of Florida.  Plaintiffs are informed and believe that Meds Direct FL is not a citizen of the States of California or Delaware.

15.     For purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs are informed and believe that Defendant Meds Direct NY is not a citizen of the States of California or Delaware.  A search for publicly available information on the New York State Department of State, Division of Corporations website reveals that the New York State Department of State, Division of Corporations "does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited liability companies."  A further search of publicly available information did not reveal the identity of the current member or members of Meds Direct NY.  Plaintiffs hereby allege that this information is in the control and possession of Meds Direct NY.  In any event, Plaintiffs are informed and believe that Meds Direct NY is not a citizen of the States of California or Delaware.  *See*, *Carolina Cas. Ins. Co. v. Team Equip., Inc.*, 741 F. 3d 1082, 1088 (9th Cir. 2014) (holding that "when information regarding a defendant [which] is necessary to establish diversity of citizenship is not reasonably available to a plaintiff, the plaintiff should be permitted to plead jurisdictional allegations as to those defendants on information and belief and without affirmatively asserting specific details regarding the citizenship of those defendants. The diversity issue is better addressed after the defendants have had an opportunity to respond to the complaint.").

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

16. For purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332, Plaintiffs are informed and believe that Defendant PHUS is not a citizen of the States of California and Delaware. Texas is a limited partnership of the State of Texas, and whose primary place of business is located in the State of Texas. Plaintiffs are informed and believe that the sole member of PHUS is an individual who resides, and is a citizen of, the State of Texas. Plaintiffs are informed and believes, therefore, that PHUS is a citizen of the State of Texas.

17. Both Plaintiffs Enteral and TwinMed are citizens of the States of California and Delaware. Plaintiffs are informed and believe that none of Defendants Meds Direct FL, Meds Direct TN, Meds Direct NY, and PHUS are citizens of the States of California or Delaware. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

18. Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events and/or omissions giving rise to the claims alleged herein occurred in this judicial district.

## IV.   GENERAL ALLEGATIONS

### A.   The Asset Purchase Agreement

19. On or about April 9, 2013, Enteral entered into a Medicare Durable Medical Equipment, Prosthetics, Orthotics, and Supplies ("DMEPOS") Competitive Bidding Program – National Mail-Order Contract ("CBP Contract") by and between Enteral and the Centers for Medicare and Medicaid Services ("CMS").

20. CMS awarded the CBP Contract to Enteral under the DMEPOS Competitive Bidding Program implemented through the Medicare Prescription Drug, Improvement, and Modernization Act of 2003, which allows potential Medicare suppliers to submit bids for contracts to supply medical supplies under certain product categories to Medicare beneficiaries. The CBP Contract allowed for

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

1  Enteral to furnish diabetic supplies to Medicare beneficiaries through national mail

2  order.

3    21.    On or about January 20, 2015, Defendant Meds Direct TN, as Buyer,

4  entered into an Asset Purchase Agreement ("APA") with Plaintiff Enteral, as Seller,

5  whereby Meds Direct TN agreed to purchase and acquire all of Enteral's "right, title

6  and interest in and to all assets and properties of [Enteral] . . . directly and solely

7  related to performance of the CBP Contract."  A true and correct copy of the APA is

8  attached hereto as Exhibit "A" and incorporated by reference herein. A true and

9  correct copy of the CBP Contract is attached to the APA as Exhibit 1 of Exhibit "B"

10  to the APA, and incorporated by reference herein.

11    22.    The APA provides under Paragraph 8 ("Representations and

12  Warranties of the Buyers") that "Buyer has full authority to execute and deliver this

13  Agreement and consummate the transactions contemplated hereby."  The APA was

14  executed by Michael Lawler as COO of Enteral, and Allan Cohen as CFO of Meds

15  Direct TN.

16    23.    Section 11 of the APA expressly provides for certain "Post-Closing

17  Obligations" between Enteral and Meds Direct TN.  Pursuant to Sub-Section (c) of

18  Section 11 of the APA, titled "**Ongoing Product Sales**," these Post-Closing

19  Obligations include Meds Direct TN's ongoing obligation to purchase from

20  Plaintiffs certain medical goods as follows:

> **Ongoing Product Sales.**  Commencing on the Closing Date, and continuing for an initial term of eighteen (18) months [the "Initial Term"], <u>Buyer [Meds Direct TN] shall purchase from Seller [Enteral] a minimum of 30,000 boxes each quarter of Arkray Diabetic Test Strips (50 ct) at a cost of $5.50 per box</u>, with the first purchase of 30,000 boxes to occur, and corresponding payment to be made, on the Closing Date (the "Initial Product Supply Payment").Subsequent quarterly product supply payments are due thirty (30) days after Buyer's receipt of invoice.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

. . .

At Seller's sole election, the terms of the foregoing ongoing product sales agreement shall be renewed for an additional three (3) year term [the "Extended Term"] if Buyer is awarded a new contract for diabetic testing strips under the CMS competitive bidding program.

. . .

The terms of this <u>subsection 11c</u> shall be self-operative.

(Ex. A, § 11(c) (emphasis added).)

24.    Section 3(c) further specifies that the payment for the initial order of Arkray Diabetic Test Strips (the "Initial Product Supply Payment"), was due on the date of closing, and would be made as a condition of closing:

> **3.** **<u>Manner of Transfer and Closing</u>**
> The Assets shall be transferred from Seller to Buyer as follows:
> . . .
> c. [On the Closing Date], the "Closing" shall occur, as follows:
> (i) <u>Buyer shall deliver to Seller</u>, by wire transfer to an account (or accounts) specified by Seller, the Purchase Price <u>and the Initial Product Supply Payment (as defined in Section 11.c.)</u> . . . .

(Ex. A, § 3(c)(i) (emphasis added).)

25.    Section 11(c) of the APA further provides that any untimely payments would entitle Plaintiffs to a 5 percent late fee:

> "Buyer acknowledges that late payment by Buyer to Seller will cause Seller to incur costs that are extremely difficult to ascertain in an exact amount (including, but not limited to, processing and accounting charges). Accordingly, <u>if any payment is not received by Seller or Seller's designee when due, Buyer shall pay to Seller a late charge equal to five percent (5%) of the past due amount</u>."

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   (Ex. A, § 11(c) (emphasis added).)

2       26.    Section 11(c) of the APA further provides that "[i]n addition to the late

3   charge, if Buyer fails to make payment within thirty (30) days of the due date, Buyer

4   shall also pay Seller interest on the past due balance (accrued from the due date) at

5   the lesser of ten percent (10%) per annum, or the maximum rate allowed by law."

6   (Ex. A, § 11(c) (emphasis added).)

7       27.    Pursuant to Section 11(c) of the APA, Meds Direct TN expressly

8   "agrees that the late charge and interest represents a fair and reasonable estimate of

9   the costs that Seller will incur by reason of Buyer's late payment."  (Ex. A, § 11(c.).)

10       28.    Section 11 expressly provides that "The provisions of this <u>Section 11</u>

11   shall survive the Closing Date."  (Ex. A, § 11.)

12       29.    The APA provides in Section 12(j), that the APA "contains the entire

13   understanding of the parties hereto relating to the subject matter hereof and

14   supersedes all prior and collateral agreements, understanding, statements and

15   negotiations of the parties."

16       30.    Pursuant to Section 12(g) of the APA, "In the event a dispute shall arise

17   between the parties, whether based on contract, tort, statute, or other legal theory

18   (including, without limitation, any claim of fraud of misrepresentation), arising out

19   of or related to this Agreement, resulting in litigation, in addition to other relief as

20   may be awarded by the courts, the prevailing party or parties shall be entitled to

21   recover reasonable attorneys' fees, expenses and costs."

22   **B.**    **The First Amendment To And Assignment Of Asset Purchase**

23          **Agreement**

24       31.    On or about May 1, 2015, Enteral (as Seller), Meds Direct TN, (as

25   Buyer and Assignor) and Meds Direct NY (as Assignee), executed that certain First

26   Amendment To And Assignment Of Asset Purchase Agreement ("Amendment and

27   Assignment"), which assigned Meds Direct TN's rights and obligations under the

28   APA to Meds Direct NY, and made several amendments to the terms of the APA.  A

1199982.1

1    true and correct copy of the Amendment and Assignment is attached hereto as

2    Exhibit "B," and incorporated herein.

3         32.    The Amendment and Assignment was executed by Allan Cohen as

4    CEO of Meds Direct TN, and Kevin Singer as the Authorized Official of Meds

5    Direct NY.

6         33.    Section 2.1 of the Amendment and Assignment provides that "Assignor

7    [Meds Direct TN] hereby transfers and assigns to Assignee [Meds Direct NY] all of

8    its right, title and interest in, and obligations under, the [APA]." (Ex. B, § 2.1.)

9    Further, Section 2.2 of the Amendment and Assignment provides that "Assignee

10   [Meds Direct NY] hereby assumes the performance of, and agrees to be bound by,

11   all the obligations of Assignor [Meds Direct TN] under the Agreement, regardless of

12   whether arising before or after the Amendment Date, including, without limitation,

13   the obligation to pay the Purchase Price provided for under the [APA]." (Ex. B, §

14   2.2.)

15        34.    Section 2.3 of the Amendment and Assignment expressly provides,

16   "Nothing herein shall release Assignee [Meds Direct NY] from its obligations under

17   the [APA]." (Ex. B, § 2.3.) Moreover, nothing in the Amendment and Assignment

18   purports to release Meds Direct TN from any obligations or liability arising from the

19   APA or the Amendment and Assignment.

20        35.    The Amendment and Assignment amends the APA to, among other

21   things, "extend the Closing Date to Monday, June 1st." (Ex. B, § 1.4.)

22        36.    The Amendment and Assignment further provides that the APA shall

23   be amended to expressly provide that Plaintiff TwinMed is the supplier and seller of

24   medical supplies regarding the Post-Closing Obligations set forth in Section 11(c) of

25   the APA, as set forth above, and is therein an intended third party beneficiary of said

26   Section 11(c):

27              1.2  Ongoing Product Sales. All references to "Seller" in
                Section 11(c) of the [APA] (respecting Buyer's
28

agreement to purchase from Seller a minimum of 30,000 boxes each quarter of Arkray Diabetic Test Strips (50 ct) at a cost of $5.50 per box), shall instead mean Seller's affiliated entity, Twin Med, LLC, a Delaware limited liability company ("Twin Med") or such other person or entity designated by Seller in its sole and absolute discretion.  <u>Twin Med is a third party beneficiary of Section 11(c) of the Agreement</u>."

(Ex. B, § 1.2 (emphasis added).)

37.     The Amendment and Assignment expressly provides in Section 6, "Except as expressly set forth in this Amendment, the Original Agreement [*i.e.* the APA], remains in full force and effect."

**C.     Defendants Fail To Timely Pay For Plaintiffs' First Shipment of Goods and Further Breach the APA and Amendment and Assignment**

38.     Prior to the Closing Date, and in accordance with Paragraph 11(c) of the APA as amended by the Amendment and Assignment, in May 2015, Defendants ordered 40,000 boxes of Arkray Diabetic Test Strips from Plaintiff TwinMed.  As set forth above, pursuant to the APA, these Diabetic Test Strips were to be charged at $5.50 per box (for a total of $220,000.00).  At the same time, Defendants also ordered 500 lancing devices, with a purchase price of $0.82 per unit (for a total of $410.00), and 1,000 Assure brand Dose Control Solutions (used to check the accuracy of Diabetic Test Strips), with a purchase price of $2.85 per unit (for a total of $2,850.00).

39.     An invoice dated May 14, 2015 was submitted by TwinMed to Meds Direct, detailing the above order ("Initial Product Supply Order").  The invoice requests payment of $243,911.56 for the Initial Product Supply Order, including tax.

40.     In multiple shipments which left TwinMed's facilities between the dates of May 8, 2015 and May 26, 2015, the entirety of Meds Direct's Initial Product Supply Order was shipped.  Upon Defendants' request, the products were

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1 shipped to an address located in Deerfield Beach, Florida, which Plaintiffs are

2 informed and believe is a facility operated or owned by Defendant Meds Direct FL,

3 an affiliate of Meds Direct TN and Meds Direct NY.

4      41.    Pursuant to the terms of the APA and Amendment and Assignment,

5 payment was due on June 1, 2015.  However, Plaintiffs did not receive any payment

6 for the Initial Product Supply Order for several months, prompting Plaintiffs, on

7 October 23, 2015, to file suit in this Court against Meds Direct to recover the

8 amount due and owing, plus late fees and interest as set forth in the APA.

9      42.    Following the filing of the initial complaint, in or around November,

10 2015, Meds Direct claimed that during the time Meds Direct entered into the APA

11 and Amendment and Assignment with Enteral, it was being managed by PHUS

12 under a management agreement between PHUS and Meds Direct.

13      43.    According to Meds Direct, PHUS, as manager of Meds Direct,

14 negotiated and executed the APA and Amendment and Assignment, without Meds

15 Direct's authorization.  Meds Direct further claimed that it had no knowledge until

16 that time, that the APA and Amendment and Assignment were entered into, despite

17 the fact that the APA and Amendment and Assignment were apparently executed by

18 Meds Direct's CEO and Authorized Official Allan Cohen and Kevin Singer, and the

19 purchase price was paid by Meds Direct.  Meds Direct asserted the it was PHUS,

20 rather than Meds Direct, which is obligated under the APA and Amendment and

21 Assignment.  Meds Direct claimed that PHUS forged the signatures of Meds

22 Direct's representatives on the APA and Assignment and Amendment.

23      44.    Around this time, PHUS asserted to Plaintiffs that it was, in fact,

24 authorized to act on behalf of Meds Direct when negotiating and entering into the

25 APA and Amendment and Assignment, and that PHUS had subsequently assumed

26 the obligations of the APA and Amendment and Assignment.

27      45.    In December 2015, Plaintiffs accepted payment from PHUS for the

28 purchase price of the Initial Product Supply Order in partial performance under the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

APA, but as of the date of this Complaint, has not been paid interest, late fees, and penalties, including attorneys' fees and costs incurred, due and owing to Plaintiffs in connection with the Initial Product Supply Order.

46.     Meds Direct is the signatory to the APA and Assignment and Amendment, and is bound to the obligations set forth therein.  In the alternative, Plaintiffs are informed and believe that PHUS has taken over these obligations through assignment or assumption, as evidenced by its partial performance under the APA and Amendment and Assignment as set forth herein.

47.     As of the date of this Complaint, Defendants further breached the APA and Amendment and Assignment by failing to place orders for Arkray diabetic test strips on September 1 and December 1, 2015.  As set forth above, the APA and Amendment and Assignment obligates Meds Direct to place orders for at least 30,000 Arkray test strips every three months, for an initial period of eighteen months, after the Initial Product Supply Order of May 2015.  Defendants' failure to place these orders in September 1 and December 1, 2015 constitute a breach of the express terms of the APA and Amendment and Assignment.

48.     Plaintiffs, which are in the business of selling certain medical supplies, have the present, and future capacity to meet the demands of all customers who seek to purchase those same test strips.  As such, Plaintiffs are lost volume sellers, entitled to recover all profits lost by Defendants' breach of the agreement.  Each order, as defined by the agreement, would allow Plaintiffs to collect profits in the amount of no less than $62,100.  Accordingly, Plaintiffs' expected benefit had Defendants places these two missed orders amounts to no less than $128,200, exclusive of interest and penalties.

### D.     Defendants Indicate Their Intention Of Failing and Refusing To Fulfill Future Purchase Obligations In Anticipatory Breach Of The APA

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

49.     Through their words and conduct, Defendants have positively indicated their intention to fail and refuse their obligation to place the remaining quarterly orders of Arkray test strips in the initial eighteen-month period (for a total of four remaining orders), and to refuse their obligation to allow Plaintiffs to exercise their option to extend this term for another three years (for a total of twelve remaining orders).

50.     As set forth above, Defendants have already failed and refused to place the last two quarterly orders of Arkray test strips.

51.     Meds Direct's assigned representatives executed the APA and Amendment and Assignment, and represented at the time of execution that the signee was its authorized official or representative, and thereby representing at the time of execution its promise to order no less than 30,000 Arkray test strips each quarter for an initial term of 18 months and an extended term of 3 years, starting with the Initial Product Supply Order to be made by the date of closing.

52.     Despite making these representations at the time of execution of the APA and Amendment and Assignment, Meds Direct refused to pay for the Initial Product Supply Order, refused to place the subsequent two quarterly orders, and disclaimed its obligations under the APA and Amendment and Assignment, clearly and positively indicating that it will not honor its requirements under the APA and Amendment and Assignment.

53.     In the alternative, to the extent PHUS is bound by the APA, PHUS has also failed and refused to place the last two quarterly orders, clearly and positively indicating that it will not honor its requirements under the APA and Amendment and Assignment.

54.     As set forth above, pursuant to Section 11(c) of the APA and Section 1.2 of the Amendment and Assignment, Defendants are obligated to make further purchases of Arkray Diabetic Test Strips.  In particular, Defendants are obligated to order no less than 30,000 boxes of Diabetic Test Strips every quarter for at least

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

1   eighteen months following the Closing Date.  While the time for the first three

2   orders have passed, there remains in the future four orders to be placed within this

3   initial eighteen-month term under the terms of the APA.

4        55.    Section 11(c) of the APA further provides, "at Seller's sole election, the

5   terms of the foregoing ongoing product sales agreement shall be renewed for an

6   additional three (3) year term if Buyer is awarded a new contract for diabetic testing

7   strips under the CMS competitive bidding program."  At the time they entered the

8   APA, Defendants were aware of Plaintiffs' intent to exercise this option, which

9   would allow for an additional twelve orders to be placed during this three-year

10   extended term.

11        56.    Plaintiffs, which are in the business of selling certain medical supplies,

12   have the present, and future capacity to meet the demands of all customers who seek

13   to purchase those same test strips, including those which have yet to be placed by

14   Defendants.  As such, Plaintiffs are lost volume sellers, entitled to recover all profits

15   lost by Defendants' anticipatory breach of the agreement.  Each order, as defined by

16   the agreement, would allow Plaintiffs to collect profits in the amount of no less than

17   $62,100.  Accordingly, Plaintiffs' expected benefit had Defendants placed these

18   sixteen missed orders amounts to no less than $993,600, exclusive of interest and

19   penalties.

20                  **FIRST CAUSE OF ACTION**

21           **(Breach of Contract – Against All Defendants)**

22        57.    Plaintiffs refer to all of the preceding paragraphs and incorporates them

23   herein as if set forth in full in this cause of action.

24        58.    Enteral and Meds Direct entered into the APA, in which Meds Direct

25   agreed, among other things, to purchase a minimum of 30,000 boxes of Arkray

26   Diabetic Test Strips, at a purchase price of $5.50 per box, every quarter-year, for an

27   initial term of eighteen months starting from the Closing Date (i.e. seven total

28   orders), and an extended term, at Plaintiffs' sole option, of three addition years

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  starting from the end of the initial term (i.e. twelve total orders, together with the
2  initial term, nineteen total orders).

3      59.     Pursuant to the Amendment and Assignment dated May 1, 2015,
4  Paragraph 11(c) of the APA was amended to expressly provide that Plaintiff
5  TwinMed was an intended third-party beneficiary to Paragraph 11(c) of the APA as
6  the Seller of Arkray Diabetic Test Strips to Defendants as described therein.

7      60.     In addition, or in the alternative, Plaintiffs are informed and believe that
8  PHUS has been assigned, or has assumed the obligations under the APA and
9  Amendment and Assignment, as evidenced by PHUS's partial performance under
10 the agreements.

11     61.     Plaintiffs did all, or substantially all, of the significant things that the
12 contract required them to do or were excused from doing those things.

13     62.     All of the conditions required by the contract for Defendants'
14 placement of all quarterly orders to be placed and paid for, have occurred, have been
15 waived, or have been excused.

16     63.     Defendants breached the APA and Amendment and Assignment by,
17 among other things, failing to timely pay for the Initial Product Supply Order, and
18 failing to make and pay for at least two additional orders (in September and
19 December 1, 2015) of at least 30,000 boxes of Arkray Diabetic Strips are required
20 under the APA.

21     64.     Plaintiffs were harmed as a result of Defendants' breaches by, among
22 other things, (a) not receiving late fees, interest, and collection expenses, including
23 attorneys' fees and costs, due and owing under the APA and Amendment and
24 Assignment for Defendants' failure to timely pay for the Initial Product Supply
25 Order; (b) as lost volume sellers, not receiving the benefit of its bargain with respect
26 to profits lost, in the expected amount of no less than $62,100 per order, from
27 Defendants' failure to place orders of at least 30,000 Arkray Diabetic Strips in
28 September and December 1 2015; (c) not receiving late fees, interest, and collection

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

expenses, including attorneys' fees and costs, due and owing under the APA and Amendment and Assignment for Defendants' failure to place the September 1 and December 1, 2015 orders.

## SECOND CAUSE OF ACTION

### (Anticipatory Breach of Contract – Against All Defendants)

65.     Plaintiffs refer to all of the preceding paragraphs and incorporates them herein as if set forth in full in this cause of action.

66.     Enteral and Meds Direct entered into the APA, in which Meds Direct agreed, among other things, to purchase a minimum of 30,000 boxes of Arkray Diabetic Test Strips, at a purchase price of $5.50 per box, every quarter-year, for an initial term of eighteen months starting from the Closing Date (i.e. seven total orders), and an extended term, at Plaintiffs' sole option, of three addition years starting from the end of the initial term (i.e. twelve total orders, combined with the initial term, nineteen total orders).

67.     Pursuant to the Amendment and Assignment dated May 1, 2015, Paragraph 11(c) of the APA was amended to expressly provide that Plaintiff TwinMed was an intended third-party beneficiary to Paragraph 11(c) of the APA as the Seller of Arkray Diabetic Test Strips to Defendants as described therein.

68.     In addition, or in the alternative, Plaintiffs are informed and believe that PHUS has been assigned, or has assumed the obligations under the APA and Amendment and Assignment, as evidenced by PHUS's partial performance under the agreements.

69.     Plaintiffs did all, or substantially all, of the significant things that the contract required them to do or were excused from doing those things.

70.     All of the conditions required by the contract for Defendants' placement of all quarterly orders to be placed and paid for, have occurred, have been waived, or have been excused.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1199982.1

71.     Through their words and conduct, Defendants have positively indicated their intention to fail and refuse their obligation to place the remaining quarterly orders of Arkray test strips in the initial eighteen-month period (for a total of four remaining orders), and to refuse their obligation to allow Plaintiffs to exercise their option to extend this term for another three years (for a total of twelve remaining orders).

72.     Plaintiffs, which is in the business of selling certain medical supplies, has the present, and future capacity to meet the demands of all customers who seek to purchase those same test strips, including those which have yet to be placed by Defendants.  As such, Plaintiffs are lost volume sellers, entitled to recover all profits lost by Defendants' anticipatory breach of the agreement.  Each order, as defined by the agreement, would allow Plaintiffs to collect profits in the amount of no less than $62,100.  Accordingly, Plaintiffs' expected benefit had Defendants places these sixteen missed orders amounts to no less than $993,600.

## THIRD CAUSE OF ACTION

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING – Against All Defendants)

73.     Plaintiffs refer to all of the preceding paragraphs and incorporates them herein as if set forth in full in this cause of action.

74.     Implied in every agreement in the State of California is a duty that each of the parties will deal with each other fairly and in good faith.  This covenant was implied in the APA and Amendment and Assignment.

75.     Meds Direct breached the covenant of good faith and fair dealing when it executed the APA and Amendment and Assignment with the intent of refusing to honor its obligations under the agreements, by representing at the time of execution that the signee was its authorized official or representative then later denying that the signee was duly authorized, and by refusing to honor its obligations under the

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1   agreements by falsely claiming that it was PHUS which entered into the agreements

2   who did so without its authorization and knowledge.

3       76.    In the alternative, PHUS breached the covenant of good faith and fair

4   dealing by negotiating and entering into the APA and Amendment and Assignment

5   on behalf of Meds Direct without Meds Direct's authorization.

6       77.    Defendants further breached the covenant of good faith and fair dealing

7   by entering into these agreements with knowledge that the relationship between

8   Defendants was not clearly established, and taking subsequent intentional acts

9   which have placed Defendants' award of a new contract for diabetic testing strips

10  under the CMS competitive bidding program in jeopardy with knowledge that such

11  actions would undermine the value of Plaintiffs' option to extend Defendants'

12  purchase obligations under the agreements.

13      78.    As a direct and proximate result of Defendants breaches of the

14  covenant of good faith and fair dealing, Plaintiffs sustained damages in an amount to

15  be proved at trial.

16  ## FOURTH CAUSE OF ACTION

17  ## (INTENTIONAL FRAUD / MISREPRESENTATION / PROMISSORY

18  ## FRAUD – Against All Defendants)

19      79.    Plaintiffs refer to all of the preceding paragraphs and incorporates them

20  herein as if set forth in full in this cause of action.

21      80.    As set forth above, Meds Direct falsely represented to Plaintiffs at the

22  time of execution that its signee was duly authorized to execute the APA and

23  Amendment and Assignment on its behalf.

24      81.    In the alternative, and as set forth above, PHUS falsely represented to

25  Plaintiffs that it was, in fact, authorized to act on behalf of Meds Direct when

26  negotiating and entering into the APA and Amendment and Assignment.

27      82.    Defendants also made a material promise to Plaintiffs to place quarterly

28  orders of at least 30,000 Arkray Diabetic Strips every quarter for an initial term of

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

1  eighteen months, and an extended term of three years.  Plaintiffs are informed and

2  believe that Defendants made this promise without the intention to perform that

3  promise when it was made.  The promise was made with the intent to deceive,

4  and/or with intent to induce Plaintiffs to enter into the transaction.

5       83.    Defendants made these representations with knowledge of their falsity.

6       84.    Defendants intended that Plaintiffs rely on Defendants' representations

7  by entering into the APA, performing its obligations under the APA and

8  Amendment and Assignment, and by not pursuing other opportunities to sell its

9  business.

10       85.    As a result of Defendants' false representations, Plaintiffs suffered

11  damages in an amount to be proven at trial.

12       86.    Defendants' actions were willful, malicious, vexatious, made with

13  conscious disregard for Plaintiffs' rights and taken with the intent to defraud,

14  entitling Plaintiffs to recover punitive and exemplary damages

15  **FIFTH CAUSE OF ACTION**

16  **(NEGLIGENT FRAUD / MISREPRESENTATION – Against All Defendants)**

17       87.    Plaintiffs refer to all of the preceding paragraphs and incorporates them

18  herein as if set forth in full in this cause of action.

19       88.    As set forth above, Meds Direct represented to Plaintiffs at the time of

20  execution that its signee was duly authorized to execute the APA and Amendment

21  and Assignment on its behalf, with knowledge of its falsity or without reasonable

22  grounds for believing the representation was true when it was made.

23       89.    In the alternative, and as set forth above, PHUS represented to

24  Plaintiffs that it was, in fact, authorized to act on behalf of Meds Direct when

25  negotiating and entering into the APA and Amendment and Assignment, with

26  knowledge of its falsity or without reasonable grounds for believing the

27  representation was true when it was made.

28       90.    Defendants intended that Plaintiffs rely on Defendants' representations.

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181

91.     Defendants reasonably relied on Defendants' representations by entering into the APA, performing its obligations under the APA and Amendment and Assignment, and by not pursuing other opportunities to sell its business.

92.     As a result of Defendants' false representations, Plaintiffs suffered damages in an amount to be proven at trial.

WHEREFORE, Plaintiffs prays for judgment as follows:

1.     For general and consequential damages according to proof, plus prejudgment interest;

2.     For costs of suit incurred herein;

3.     For punitive damages;

4.     For attorneys' fees and, expenses and costs in provided by Section 12(g) of the APA; and

5.     For such other and further relief as the Court deems just and proper.

Dated:  February 9, 2016                    HOOPER, LUNDY & BOOKMAN, P.C.


                                            By:  _____/s/ Jonathan H. Shin_____
                                                      JONATHAN H. SHIN
                                            Attorneys for ENTERAL PRODUCTS, LLC
                                            and TWIN MED, LLC

HOOPER, LUNDY & BOOKMAN, P.C.
1875 CENTURY PARK EAST, SUITE 1600
LOS ANGELES, CALIFORNIA 90067-2517
TEL.: (310) 551-8111 • FAX: (310) 551-8181