1

Elizabeth K. Stepp (Admitted *pro hac vice*)
eks@federal-lawyer.com

2

OBERHEIDEN LAW GROUP, PLLC
5210 LBJ Freeway, Suite 120

3

Dallas, Texas 75240
Telephone:  214-334-7648

4

Facsimile:  972-559-3365

5

Hamilton Arendsen (SBN 212844)
harendsen@arendsencane.com

6

ARENDSEN CANE LLP
550 West "C" Street, Suite 1150

7

San Diego, CA 92101
Telephone:  619-535-3910

8

Facsimile:  619-535-3920

9

Attorneys for Defendant PHARMA HOLDINGS US, LTD.,
a Texas limited partnership

10

11

**UNITED STATES DISTRICT COURT**

12

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14

ENTERAL PRODUCTS, LLC, a California
limited liability company; TWIN MED,
LLC, a Delaware limited liability company,

15

Plaintiffs,

16

vs.

17

18

MEDS DIRECT RX OF NY, LLC, a New
York limited liability company; MEDS
DIRECT RX OF TN, LLC, a Tennessee

19

limited liability company; MEDS DIRECT
RX OF FL, LLC, a Florida limited liability

20

company; PHARMA HOLDINGS US,
LTD., a Texas limited partnership; and

21

DOES 1 through 25, inclusive,

22

Defendants, and

23

vs.

24

GOOD  SHEPHERD  PHARMACY,  INC.,
NEW  HOPE  PHARMACY,  INC. D/B/A

25

MEDS  DIRECT  RX  OF  CA,  KEVIN
SINGER, AND PAUL LEIGHT,

26

Third-Party Defendants.

27

28

Case No. 2:16-cv-915 RGK (RAOx)

**FIRST AMENDED ANSWER TO CROSSCLAIMS, ORIGINAL CROSSCLAIMS OF DEFENDANT PHARMA HOLDINGS US, LTD. AGAINST DEFENDANTS MEDS DIRECT OF NY, LLC, MEDS DIRECT RX OF TN, LLC, AND MEDS DIRECT RX OF FL, LLC, AND THIRD PARTY COMPLAINT AGAINST GOOD SHEPHERD PHARMACY, INC., NEW HOPE PHARMACY, INC. D/B/A MEDS DIRECT RX OF CA, KEVIN SINGER, AND PAUL LEIGHT**

1

COMES NOW, Defendant Pharma Holdings US, Ltd. ("PHUS"), and files its First Amended Answer to the Crossclaims of Meds Direct RX of NY, LLC ("MDNY"), Meds Direct RX of TN, LLC ("MDTN"), and Meds Direct RX of FL, LLC ("MDFL") (collectively, the "Meds Direct Defendants") ("Meds Direct Crossclaims"), its crossclaims against the Meds Direct Defendants, and its third party complaint against Good Shepherd Pharmacy, Inc., New Hope Pharmacy, Inc., d/b/a Meds Direct RX of CA, Kevin Singer, and Paul Leight (the "Crossclaims and Third Party Complaint")[1] as follows:

## AMENDED ANSWER TO MEDS DIRECT CROSSCLAIMS

### PARTIES

1. PHUS does not have sufficient information on which to base an admission or denial of the allegations in Paragraph 1 of the Meds Direct Crossclaims, and therefore denies them.

2. PHUS does not have sufficient information on which to base an admission or denial of the allegations in Paragraph 2 of the Meds Direct Crossclaims, and therefore denies them.

3. PHUS does not have sufficient information on which to base an admission or denial of the allegations in Paragraph 3 of the Meds Direct Crossclaims, and therefore denies them.

4. PHUS admits that it is a Texas limited partnership with its principal place of business in the state of Texas and denies any remaining allegations of Paragraph 4 of the Meds Direct Crossclaims.

### JURISDICTION AND VENUE

5. PHUS admits that diversity jurisdiction over the Meds Direct Crossclaims is proper and denies any remaining allegations of Paragraph 5 of the Meds Direct Crossclaims.

---

[1] The Meds Direct Defendants together with Good Shepherd Pharmacy, Inc. and New Hope Pharmacy, Inc., d/b/a Meds Direct RX of CA are referred to herein as "Meds Direct."

6. PHUS admits that venue is proper in this Court for the Meds Direct Crossclaims and denies any remaining allegations of Paragraph 6 of the Meds Direct Crossclaims.

## COUNT I

### (Contractual Indemnity By MDTN Against PHUS)

7. PHUS restates and incorporates by reference each and every response contained in the preceding paragraphs of this answer as if fully set forth herein.

8. PHUS admits that it entered into a Management Services Agreement with MDTN on or about January 17, 2015 (the " TNMSA"), and admits that a true and correct copy of that agreement is attached to the Meds Direct Crossclaims as Exhibit A. PHUS denies the remainder of the allegations of Paragraph 8 of the Meds Direct Crossclaims and states that the document speaks for itself.

9. PHUS admits that it intended to purchase certain assets from MDTN and that the TNMSA states that it is effective through the earlier of either April 1, 2015 or the date contemplated by the anticipated asset purchase agreement. PHUS does not have sufficient information on which to base an admission or denial of the remainder of the allegations in Paragraph 9 of the Meds Direct Crossclaims, and therefore denies them.

10. In response to Paragraph 10 of the Meds Direct Crossclaims, PHUS states that the TNMSA speaks for itself and admits that Paragraph 8 of the TNMSA contains an indemnification clause. PHUS denies the remainder of the allegations of Paragraph 10 of the Meds Direct Crossclaims.

11. PHUS admits that MDTN has been named as a defendant in the underlying Complaint, and denies the remainder of the allegations of Paragraph 11 of the Meds Direct Crossclaims.

12. PHUS denies the allegations of Paragraph 12 of the Meds Direct Crossclaims.

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

1

2

## COUNT II

### (Contractual Indemnity By MDFL Against PHUS)

3     13.  PHUS restates and incorporates by reference each and every response

4 contained in the preceding paragraphs of this answer as if fully set forth herein.

5     14.  PHUS admits that it entered into a Management Services Agreement with

6 MDFL on or about January 17, 2015 (the "FLMSA"), and admits that a true and

7 correct copy of that agreement is attached to the Meds Direct Crossclaims as Exhibit

8 B.   PHUS denies the remainder of the allegations of Paragraph 14 of the Meds

9 Direct Crossclaims and states that the document speaks for itself.

10     15.  PHUS admits that it intended to purchase certain assets from MDFL and that

11 the FLMSA states that it is effective through the earlier of either April 1, 2015 or the

12 date contemplated by the anticipated asset purchase agreement.   PHUS does not

13 have sufficient information on which to base an admission or denial of the

14 remainder of the allegations in Paragraph 15 of the Meds Direct Crossclaims, and

15 therefore denies them.

16     16.  In response to Paragraph 16 of the Meds Direct Crossclaims, PHUS states

17 that the FLMSA speaks for itself and admits that Paragraph 8 of the FLMSA

18 contains an indemnification clause.  PHUS denies the remainder of the allegations

19 of Paragraph 16 of the Meds Direct Crossclaims.

20     17.  PHUS admits that MDTN has been named as a defendant in the underlying

21 Complaint, and denies the remainder of the allegations of Paragraph 17 of the Meds

22 Direct Crossclaims.

23     18. PHUS denies the allegations of Paragraph 18 of the Meds Direct

24 Crossclaims.

25

26

## COUNT III

### (Contractual Indemnity By MDNY Against PHUS)

27     19.  PHUS restates and incorporates by reference each and every response

28 contained in the preceding paragraphs of this answer as if fully set forth herein.

4

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

20.  PHUS admits that it entered into a Management Services Agreement with MDNY on or about January 17, 2015 (the "NYMSA"), and admits that a true and correct copy of that agreement is attached to the Meds Direct Crossclaims as Exhibit C.  PHUS denies the remainder of the allegations of Paragraph 20 of the Meds Direct Crossclaims and states that the document speaks for itself.

21.  PHUS admits that it intended to purchase certain assets from MDNY and that the NYMSA states that it is effective through the earlier of either April 1, 2015 or the date contemplated by the anticipated asset purchase agreement.  PHUS does not have sufficient information on which to base an admission or denial of the remainder of the allegations in Paragraph 21 of the Meds Direct Crossclaims, and therefore denies them.

22.  In response to Paragraph 22 of the Meds Direct Crossclaims, PHUS states that the NYMSA speaks for itself and admits that Paragraph 8 of the NYMSA contains an indemnification clause.  PHUS denies the remainder of the allegations of Paragraph 22 of the Meds Direct Crossclaims.

23.  PHUS admits that MDNY has been named as a defendant in the underlying Complaint, and denies the remainder of the allegations of Paragraph 23 of the Meds Direct Crossclaims.

24.  PHUS denies the allegations of Paragraph 24 of the Meds Direct Crossclaims.

## COUNT IV

### (Contractual Indemnity By Meds Direct Against PHUS)

25.  PHUS restates and incorporates by reference each and every response contained in the preceding paragraphs of this answer as if fully set forth herein.

26.  PHUS admits that it entered into a Pharmacies Purchase and Sale Agreement with the Meds Direct Defendants on or about April 1, 2015 (the "PPSA"), in which PHUS purchased certain assets from the Meds Direct Defendants and two of their

affiliates.  PHUS denies the remainder of the allegations of Paragraph 26 of the Meds Direct Crossclaims and states that the document speaks for itself.

27.  In response to Paragraph 27 of the Meds Direct Crossclaims, PHUS states that the PPSA speaks for itself and admits that Paragraph 9 of the PPSA contains an indemnification clause.  PHUS denies the remainder of the allegations of Paragraph 27 of the Meds Direct Crossclaims.

28. PHUS admits that the Meds Direct Defendants have been named as defendants in the underlying Complaint, and denies the remainder of the allegations of Paragraph 28 of the Meds Direct Crossclaims.

29. PHUS denies the allegations of Paragraph 29 of the Meds Direct Crossclaims.

## COUNT V

### (Equitable Indemnity By Meds Direct Against PHUS)

30. PHUS restates and incorporates by reference each and every response contained in the preceding paragraphs of this answer as if fully set forth herein.

31. PHUS does not have sufficient information on which to base an admission or denial of the allegations in the first clause of Paragraph 31 of the Meds Direct Crossclaims, and therefore denies them.  PHUS denies the allegations in the second clause of Paragraph 31 of the Meds Direct Crossclaims.

32. PHUS does not have sufficient information on which to base an admission or denial of the allegations in Paragraph 32 of the Meds Direct Crossclaims, and therefore denies them.

33. PHUS denies the allegations of Paragraph 33 of the Meds Direct Crossclaims.

### PRAYER FOR RELIEF

34. PHUS denies that the Meds Direct Defendants are entitled to any of the relief sought.

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

## PHUS'S DEFENSES AND AFFIRMATIVE DEFENSES

35.  The Meds Direct Crossclaims fail to state a claim on which relief may be granted.

36.  The Meds Direct Crossclaims are barred in whole or in part because the Meds Direct Defendants have not properly pled a claim for recovery of attorney's fees.

37.  The Meds Direct Crossclaims are barred in whole or in part because the Meds Direct Defendants failed to mitigate their damages.

38.  The Meds Direct Crossclaims are barred in whole or in part by the doctrine of unclean hands.

39.  The Meds Direct Crossclaims are barred in whole or in part under principles of equity, including without limitation waiver, estoppel, and acquiescence.

40.  The Meds Direct Crossclaims are barred in whole or in part by fraud.

41.  The Meds Direct Crossclaims are barred in whole or in part by lack of consideration.

42.  The Meds Direct Crossclaims are barred in whole or in part by Meds Direct's prior breach of the contracts at issue.

43.  PHUS is entitled to rescission of any contracts alleged in the Meds Direct Crossclaims due to fraud or mistake.

44.  PHUS alleges that it may have other separate and additional defenses of which it is presently unaware and hereby reserves the right to raise such defenses by amendment of this answer, including to conform to proof at trial.

## CROSSCLAIMS AND THIRD PARTY COMPLAINT

### I.     NATURE OF THE ACTION

1.     This action arises out of Meds Direct's deliberate, immoral, shameful, and illegal trespasses to PHUS's rights and interests.  PHUS brings this action to remedy the harm Meds Direct has caused to it through fraud, deceit, unfair dealings, and attempted extortion.

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

2.     Indeed, PHUS bought the assets of the five companies that make up Meds Direct through a purchase and sale agreement signed in April 2015.  However, since that time, Meds Direct, through and with the assistance of its principals Singer and Leight, have sought to delay, prevent, and obstruct PHUS from legal and safe operation of the pharmacies as contemplated by the sale agreement.  In fact, the California pharmacy was closed because Singer and Leight refused to sign the necessary transfer documents on behalf of Meds Direct.  Pharmacies in Tennessee and Florida were closed because Singer and Leight, attempting to escape personal guarantees they had signed, refused to agree to new leases negotiated by PHUS.  The loss of these pharmacies has caused millions of dollars in damages to PHUS.

3.     Additionally, through this lawsuit, Enteral is attempting to hold PHUS liable for a contract signed by Meds Direct, a contract that Meds Direct claimed to have sold to PHUS but now repudiates.  PHUS made one payment to Enteral for Meds Direct, which was not PHUS's obligation, and which only served to make it a defendant in this lawsuit.  Indeed, Enteral is now demanding that PHUS fulfill the contract Enteral has with Meds Direct even though PHUS is not a party to the contract.  Moreover, Meds Direct's shenanigans with the Enteral contract caused PHUS to be left holding the bag containing hundreds of thousands of dollars worth of diabetic testing supplies which it could not distribute and for which it could not be paid.  Meds Direct is both contractually and equitably required to indemnify PHUS for the Enteral claims.

## II.     PARTIES

4.     PHUS is a Texas limited partnership, all of whose general and limited partners are Texas citizens.  As such, PHUS is a citizen of the state of Texas.  For purposes of this action only, it may be served through its counsel listed below.

5.     Defendant Meds Direct RX of NY, LLC ("MDNY"), is a New York limited liability company that has appeared in this case and which, PHUS is informed and believes, is not a citizen of Texas.

8

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

6.     Defendant Meds Direct RX of TN, LLC ("MDTN"), is a Tennessee limited liability company that has appeared in this case and which, PHUS is informed and believes, is not a citizen of Texas.

7.     Defendant Meds Direct RX of FL, LLC ("MDFL"), is a Florida limited liability company that has appeared in this case and which, PHUS is informed and believes, is not a citizen of Texas.

8.     Defendant Good Shepherd Pharmacy, Inc. ("MDPR"), is a Puerto Rico corporation.  It may be served with process by serving its registered agent for service of process, Miguel Figueroa, Vista Alegre paseo colonias 1635, Ponce, PR 00717.  PHUS is informed and believes that Good Shepherd Pharamacy, Inc. is not a citizen of Texas.

9.     Defendant New Hope Pharmacy, Inc., d/b/a Meds Direct RX of CA ("MDCA"), is a California corporation.  It may be served with process by serving its registered agent for service of process, CSC – Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.  PHUS is informed and believes that New Hope Pharmacy, Inc., is not a citizen of Texas.

10.     Defendant Kevin Singer is an individual residing in Florida who may be served with process at his place of business, 1930 Harrison Street, Hollywood, FL 33020, and who is not a citizen of Texas.

11.     Defendant Paul Leight is an individual residing in Florida who may be served with process at his place of business, 1930 Harrison Street, Hollywood, FL 33020, and who is not a citizen of Texas.

### III.     JURISDICTION AND VENUE

12.     This Court has diversity jurisdiction of these crossclaims and third party complaint under 28 U.S. C. § 1332, as PHUS is a resident of Texas, no Defendant is a resident of Texas and the amount in controversy is greater than $75,000, and because this Court has diversity jurisdiction over the underlying Complaint.  This Court also has subject matter jurisdiction of the third party

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

complaint under Federal Rule of Civil Procedure 14 because the third parties named herein may be liable to PHUS for all or part of the claims against PHUS as asserted in the Complaint.

13.   This Court has personal jurisdiction over Meds Direct, Leight, and Singer as each of them has conducted business in this state sufficient to subject it to this Court's jurisdiction, and because each of them has sufficient contact with the state of California such that the exercise of jurisdiction over it does not offend the traditional notions of fair play and substantial justice.

14.   Venue is proper in this Court under 28 U.S.C. § 1391, as at least one member of Meds Direct is based in and does business in this district, some of the unlawful acts complained of occurred in the district, and because venue is proper for the underlying Complaint.

## IV.   BACKGROUND FACTS

15.   Pharma Holdings US, Ltd. ("PHUS") is a Texas-based company that owns and operates pharmacies throughout the country.  PHUS and its executives have years of experience in managing, administrating, and operating all aspects of the pharmacy business.

16.   Meds Direct owned and operated a chain of pharmacies with locations in New York, Tennessee, Florida, California, and Puerto Rico.

17.   Enteral is a California company that, among other things, supplies diabetic supplies to end user patients via mail order under a contract with Medicare.

18.   In late 2014, Meds Direct began looking to sell their pharmacies. While PHUS was ultimately interested in purchasing the pharmacies, it could not complete the necessary due diligence on the transaction in the time frame in which Meds Direct, Singer, and Leight demanded to receive payment.   Nonetheless, because PHUS had done business in the past with one of Meds Direct's principals, they agreed to pay $1.5 million for the assets of the pharmacies, but structured the transaction as a two-step process.

**A.    The Management Services Agreements**

19.    In the first step, which was designed to allow PHUS to finish its due diligence and prepare for the acquisition of the pharmacies, PHUS entered into five Management Services Agreements (the "MSAs") – one with each pharmacy.

20.    The MSAs provided that effective as of January 17, 2015 and continuing through March 31, 2015, PHUS would take over the management and oversight of the pharmacies. As payment for these management services, PHUS agreed to receive 100% of the profits or pay for 100% of the losses during this period. The MSAs also stated that PHUS would be responsible for the payment of all invoices, payroll and other expenses incurred on or after January 17th, 2015.

21.    Further, the MSAs provided that, effective as of April 1, 2015, PHUS or its affiliates would enter into a Pharmacy Purchase and Sale Agreement.  Also pursuant to the MSAs, PHUS would immediately deposit $1,500,000.00 as deposit against the ultimate asset acquisition.

22.    During the period of the MSA, PHUS was presented with a weekly listing of invoices that had been paid and payrolls that required funding. PHUS made payments at least weekly, and sometimes more frequently, to Meds Direct to fund its accounts as presented by Meds Direct to PHUS.  PHUS paid all invoices and payroll demands presented by Meds Direct for the relevant time period.

23.    However, Meds Direct has now claimed that PHUS owes it an additional $420,000 in unpaid invoices, which Meds Direct claims it paid during the term of the MSAs.  However, the "ledger" provided to support these claims shows that many, if not most, of them were for dates prior to January 17, 2015, and thus not the responsibility of PHUS.  Meds Direct has failed to provide a P&L, balance sheets, or other accounting records that would enable PHUS to decipher the invoices or to reconcile the cash taken from the bank accounts of Meds Direct by its principals while the pharmacies were under PHUS's control.  On information and

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

1  belief, some of this money was taken by Leight and Singer to fund their other
2  business ventures as well as to pay for their personal expenses.

3      24.    Each of the MSAs provided that the sellers, which included each of the
4  members of Meds Direct, would indemnify PHUS for any breach of Meds Direct's
5  obligations under the MSA and for "any liability, claim, action, damage, expense or
6  cost which was incurred by reason of the Company or any of its agents or
7  employees [sic] negligent act or negligent omission or willful misconduct"
8  following January 17, 2015.

9  **B. The Pharmacies Purchase and Sale Agreement**

10     25.    On April 1, 2015, PHUS and Meds Direct signed a contract entitled
11 "Pharmacies Purchase and Sale Agreement," known as the "PPSA."  Under this
12 contract, PHUS acquired the assets of the pharmacies through subsidiary companies
13 that were designed to take the place of the Meds Direct pharmacy in each of the five
14 locations.

15     26.    Once the PPSA was signed, PHUS timely filed for changes in
16 ownership licensing from Meds Direct to the new subsidiary companies.

17     27.    In addition, prototype Lease Assignment and Assumption Agreements
18 had been drafted and signed by both parties for presentation to the pharmacies'
19 landlords. And, notifications to insurance providers and other organizations were in
20 the process of being made.

21     28.    Unfortunately, none of the pharmacies' landlords would accept the
22 lease assumptions as drafted and agreed to by the parties.  Months of negotiation
23 followed, and PHUS used reasonable commercial efforts to have all of the building
24 leases transferred to it and to release the Meds Direct principals, Singer and Leight,
25 from the personal guarantees they had signed for the leases.  Ultimately, PHUS had
26 successfully negotiated new leases in four of the five locations.  The Puerto Rico,
27 California, and New York landlords agreed to new leases with PHUS that did not
28 require Meds Direct approval or signatures.

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

29.     However, the Tennessee and Florida landlords would not agree to new leases under the terms proposed.  In Tennessee, the landlord agreed to exchange the Meds Direct personal guarantees for a guaranty from PHUS, to which PHUS agreed. The landlord and PHUS signed or agreed to sign the lease assignment, but Singer and Leight refused to sign this agreement on behalf of Meds Direct.  This refusal is in direct violation of their responsibility under the PPSA to assist in transferring the leases to PHUS.  For this reason, the Tennessee location has been vacated, and Meds Direct remains responsible for that lease.

30.     In Florida, the landlord made it abundantly clear that under no circumstances would he release Meds Direct from their guaranty. Section 8.3 of the PPSA provides *"... Buyers and PHUS covenant and agree to exert reasonable commercial effort to obtain from each Landlord the release and exoneration of Sellers from the Leases and release and exoneration of any personal guaranty. . . ."* PHUS used reasonable commercial efforts to obtain these releases, but the Florida landlord did not agree to do so. The landlord was, however, willing to sign a Lease Assignment and Assumption Agreement as long as the guarantees of the Meds Direct principals Singer and Leight remain.  Singer and Leight refused to sign this assignment on behalf of Meds Direct because of their personal guaranties remaining in effect, again in violation of their responsibilities under section 8 of the PPSA to cooperate in the lease transfers.  Because the assignment was never completed, Meds Direct remains responsible for the Florida lease.  The pharmacy in Florida has vacated the location.

31.     Section 13.1 of the PPSA also requires Meds Direct to "execute and deliver all such further instruments and documents and . . . perform all other acts which [PHUS] may reasonably request in order to further effect or perfect the sale and transfer of the Pharmacies" to PHUS.  Despite this obligation, Meds Direct refused to sign multiple documents, including a form required by the state of California to transfer the pharmacy licenses, updated DEA Powers of Attorney for

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

California and New York due to the delay in obtaining the new licenses, and many other documents that were necessary to complete the transfers contemplated by the agreement and for which PHUS paid 1.5 million dollars.

32.     With respect to the California forms alone, Meds Direct's failure to deliver the signed documents has required the closure of the pharmacy. Meds Direct is using this fact as a means to attempt to extort more money from PHUS, demanding another million dollars for the purchase of Meds Direct RX of TN, LLC, and refusing to sign the requested agreements unless PHUS pays such money and purchases that company. With the California pharmacy shut down, PHUS's damages are rising daily and will be in the millions of dollars very quickly.

33.     The PPSA also provides that Meds Direct will "indemnify, defend, and hold harmless" PHUS from any "claims, demands, losses, liabilities, costs, expenses, obligations, and damages" incurred by PHUS for any liabilities or obligations of the pharmacies arising prior to the date PHUS took over management of the pharmacies, or for any breach of the representations and warranties in the PPSA by Meds Direct. One of those representations was that Meds Direct owned the Enteral Contract, as referenced below.

**C. The Enteral Contract**

34.     Finally, one of the assets that Meds Direct claimed to own, and claimed to convey to PHUS as part of the transaction, was a contract between Meds Direct Rx of TN, LLC and Enteral (the "Enteral Contract"). Enteral had received the right to provide diabetic supplies to Medicare beneficiaries nationwide via mail order, and Meds Direct represented that it had purchased Enteral's assets, and thus was now the owner of this contract to provide such supplies through Medicare. This contract was to be transferred to PHUS as part of the PPSA.

35.     The Enteral Contract requires Meds Direct to service the existing customer base and purchase 30,000 boxes of test strips quarterly for a period of 18 months from Enteral. Believing that it would soon be the owner of the contract,

14

PHUS began taking delivery of the test strips immediately.  However, before PHUS could bill Medicare for these sales, it had to be approved to do so under the contract through a novation, which transfers the ownership of the contract from Enteral to Meds Direct Rx of TN, LLC.  Once that novation was completed, there would be a second novation required to transfer the ownership of the contract from Meds Direct RX of TN, LLC to PHUS before PHUS could submit any claims to Medicare.  PHUS currently has over $430,000 of billings under the Enteral Contract, for which it cannot be paid until the Novation Agreements are approved.

36.    However, once again, Meds Direct refused to cooperate in obtaining the Novation Agreements.  In fact, Meds Direct is now claiming that it never signed the Enteral Contract and therefore never had any rights with respect to the test strips, even though Meds Direct signed the first Novation Agreement. Additionally, Meds Direct claimed to have conveyed the Enteral Contract, as one of its assets, to PHUS in the transaction between the parties.  Meds Direct either defrauded PHUS by claiming to sell it an asset it did not own, or is now lying about the validity of a contract that it signed in an effort to cause more damages to PHUS.

37.    As a result of Meds Direct's shenanigans, Enteral has now sued PHUS in this case for performance under the contract and demanded hundreds of thousands of dollars from PHUS in late payments, penalties, and additional orders of test strips.  PHUS has no use for such test strips because it is unable to bill for them without the novation, and it is not a party to the contract under which Enteral is demanding performance.

38.    Even worse, Meds Direct, Singer, and Leight are attempting to extort money from PHUS by claiming that PHUS has made a false statement to a federal agency by seeking the novation and that PHUS has submitted claims to Medicare in violation of the False Claims Act.  Notably, both of these claims are demonstrably false.  Specifically, as noted, PHUS has not submitted any claims to Medicare under the Enteral Contract.  Nevertheless, even the accusation of such a violation causes

damages to PHUS and to its reputation in the community.  Meds Direct demanded that PHUS purchase Meds Direct RX of TN, LLC for the price of one million dollars in order for Meds Direct to sign the Novation Agreements and the other documents needed by PHUS to complete the transaction.

### V.    CAUSES OF ACTION

**COUNT I – BREACH OF CONTRACT (Against Meds Direct)**

39.    PHUS incorporates all of the allegations described above in Paragraphs 1 -38.

40.    The Management Services Agreements and the Pharmacies Purchase and Sale Agreement were valid contracts between PHUS and Meds Direct.

41.    PHUS performed all of its obligations according to the terms of the contracts.

42.    Meds Direct's actions as detailed herein constituted breaches of the contracts, including by overcharging PHUS under the MSAs, refusing to cooperate in lease transfers and novations, and failing to sell PHUS the Enteral Contract that was negotiated as part of the PPSA.

43.    As a result of Meds Direct's breaches, PHUS has sustained damages.

44.    Further, the wrongful acts of Meds Direct set forth in this count were done maliciously, oppressively, and with the intent to harm PHUS, and PHUS is entitled to punitive and exemplary damages against Meds Direct in a sum that is not less than three times the amount of PHUS's actual damages.

**COUNT II – DECLARATORY JUDGMENT (Against Meds Direct, Singer, and Leight)**

45.    PHUS incorporates all of the allegations described above in Paragraphs 1 - 38.

46.    Meds Direct, Singer, and Leight have accused PHUS of falsely processing a claim for a novation based on the Enteral contract.

47.     Singer and Leight, on their own behalf and on behalf of Meds Direct, represented to PHUS that the Enteral Contract was valid and, indeed, was one of Meds Direct's assets for which PHUS paid.

48.     The accusation of falsely processing a claim for a novation, if true, would constitute a violation of the False Claims Act by PHUS and would constitute making a false statement to a federal agency, both of which are violations of federal law.  Meds Direct has threatened to bring a lawsuit against PHUS on this basis.

49.     An actual, present, and justiciable controversy has arisen between PHUS and Meds Direct, Singer, and Leight concerning the Enteral contract and the novation agreement.

50.     PHUS seeks a declaratory judgment from this Court that its actions with respect to the Enteral contract did not constitute a false claim or a false statement to a federal agency.

**COUNT III – FRAUD  (Against MDTN, MDNY, Leight, and Singer)**

51.     PHUS incorporates all of the allegations described above in Paragraphs 1- 38.

52.     MDTN, MDNY, Leight, and Singer represented to PHUS that first, MDTN, and later, MDNY, owned the rights to the Enteral Contract prior to the time the PPSA was signed.  Specifically, Leight and Singer made these representations orally to Cary Rossel repeatedly between January and April 2015, during negotiations regarding the MSAs, the PPSA, and as the parties attempted to finalize the transactions.  Leight and Singer specifically told Rossel on multiple occasions that the Enteral Contract was an asset of MDTN or MDNY that PHUS would be purchasing in the transaction.  The PPSA states that all assets of the pharmacies – which PHUS, through Rossel, had been told included the Enteral Contract – were owned by the companies in question.

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

53.     These representations were false, and MDTN, MDNY, Leight, and Singer knew they were false when made or made the representations recklessly without any knowledge of their truth as positive assertions.

54.     MDTN, MDNY, Leight, and Singer intended PHUS to rely upon their representations, and PHUS did so rely by entering into the PPSA, taking delivery of test strips from Enteral, servicing customers under the Enteral Contract, and paying Enteral for the first shipment of those test strips.

55.     PHUS has suffered injury and damage from the fraudulent actions of MDTN, MDNY, Leight, and Singer because it has not been able to be paid for its actions under the Enteral Contract.  Additionally, PHUS has been damaged by being sued in this lawsuit as a result of voluntarily paying for the first shipment of strips.  PHUS seeks compensatory damages for its injury in an amount to be determined by the trier of fact.

56.     MDTN and MDNY planned to benefit from their fraud by securing the sale of their pharmacies.  Leight and Singer planned to benefit both by selling the pharmacies and by removing themselves from the personal guaranties they had signed for the pharmacies' leases.

57.     The wrongful acts of MDTN, MDNY, Leight, and Singer set forth in this count were done maliciously, oppressively, and with the intent to harm PHUS, and PHUS is entitled to punitive and exemplary damages in a sum that is not less than three times the amount of its actual damages.

**COUNT V – EXTORTION (Against Meds Direct)**

58.     PHUS incorporates all of the allegations described above in Paragraphs 1-57.

59.     Each individual member of Meds Direct – MDTN, MDNY, MDFL, MDPR, and MDCA – conspired with the other four corporate entities to violate the provisions of Florida Statute § 772.103 by engaging in extortion as defined in

Florida Statute § 836.05.  Together, these corporations formed an enterprise known as Meds Direct.

60.    Specifically, each entity that was a member of the Meds Direct enterprise threatened to falsely accuse PHUS of the crimes of lying to a federal agency and of violating the False Claims Act.  Moreover, Meds Direct threatened injury to PHUS's property by directing the principals of each corporate entity to refuse to sign the required documents to effectuate the transfer of the pharmacies in breach of their contractual obligations.  Such actions constituted a pattern of criminal activity.

61.    Meds Direct conducted or participated, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.  Specifically, the members of Meds Direct repeatedly required PHUS to pay additional sums for Meds Direct to comply with their contractual duties or attempted to do so.  This action constituted a collection or attempted collection of unlawful debt.

62.    Meds Direct made such threats with the intent to extort money or a pecuniary advantage from PHUS.  These extortion attempts included asserting that PHUS owed Meds Direct money during the time that PHUS managed the pharmacy, when such sums were not lawfully owed; threatening to make false reports about PHUS to federal agencies unless it received additional money from PHUS; and telling PHUS that it would comply with its contractual obligations to sign the novations and lease assignments only if PHUS paid it an additional one million dollars to "purchase" one of the Meds Direct companies.

63.    The actions of the Meds Direct criminal enterprise were the proximate cause of PHUS's injuries and damaged PHUS as detailed herein.

64.    Under Florida Statute § 772.104, PHUS is therefore entitled to damages in the amount of not less than $200, as well as threefold actual damages caused by the criminal activity of Meds Direct, and reasonable attorney's fees and court costs.

**COUNT VI – INDEMNIFICATION  (Against Meds Direct, Leight, and Singer)**

63.     PHUS incorporates all of the allegations described above in Paragraphs 1-36 and in Paragraphs 51-57.

64.     Under the MSAs, MDTN, MDNY, MDFL, MDCA and MDPR each promised to indemnify PHUS for any breach of the MSA or for any liability incurred by PHUS due to a negligent act or omission or willful misconduct of any of the Meds Direct companies or their employees or agents.

65.     Under the PPSA, Meds Direct agreed to "indemnify, defend, and hold harmless" PHUS from any "claims, demands, losses, liabilities, costs, expenses, obligations, and damages" incurred by PHUS for any liabilities or obligations of the pharmacies arising prior to the date PHUS took over management of the pharmacies, or for any breach of the representations and warranties in the PPSA by Meds Direct.

66.     MDTN, MDNY, Leight, and Singer committed willful misconduct or a negligent act by representing that the Enteral Contract was an asset of Meds Direct. MDTN and MDNY breached the representations and warranties in the PPSA by misrepresenting that Meds Direct owned the Enteral Contract through one of its companies.

67.     Finally, MDTN, MDNY, Leight, and Singer committed fraud by claiming that Meds Direct owned the Enteral Contract, which they are now claiming is fraudulent.

68.     As a direct result of the actions of Meds Direct, Leight, and Singer, PHUS has been named as a Defendant in this case and has incurred and continues to incur attorneys' fees and costs in defending the litigation.

69.     By reason of the foregoing, PHUS is entitled to contractual indemnification from each of the Meds Direct companies and to equitable indemnification from each of the Meds Direct companies, Leight, and Singer, for the underlying Complaint.

# VI.   PRAYER

WHEREFORE, PHUS prays that upon a final hearing or trial, PHUS be awarded judgment against all Crossclaim Defendants and Third-Party Defendants, jointly and severally, for the following:

(a) Compensatory damages;

(b) Punitive damages;

(c) Liquidated damages;

(d) Equitable relief;

(e) Reasonable attorneys' fees;

(f) Expert fees;

(g) Court costs;

(h) Prejudgment and post-judgment interest; and

(i) Such other general relief to which PHUS may be justly entitled.

DATED:   May 12, 2016                    OBERHEIDEN LAW GROUP, PLLC

By:   *s/Elizabeth K. Stepp*
Elizabeth K. Stepp
Attorneys for Defendant PHARMA
HOLDINGS US, LTD.,
a Texas limited partnership

DATED:  May 12, 2016                    ARENDSEN CANE LLP

By:   *s/Hamilton Arendsen*
Hamilton Arendsen
Attorneys for Defendant PHARMA
HOLDINGS US, LTD.,
a Texas limited partnership

AMENDED ANSWER, CROSSCLAIMS, AND THIRD PARTY COMPLAINT

**CERTIFICATE OF SERVICE**
*Enteral Products, LLC, et al. vs. Meds Direct Rix of NY, LLC et al.*
**Case No. 2:16-cv-916 RGK (RAOx)**
**STATE OF TEXAS, COUNTY OF DALLAS**

I am a citizen of the United States and employed in Dallas, Texas, and am permitted to appear as an attorney in this case *pro hac vice* by order of the court. I am over the age of 18 and not a party to the within actions; my business address is 5710 LBJ Freeway Suite 120, Dallas, Texas 75240.

On May 11, 2016, I served the document(s) entitled FIRST AMENDED ANSWER TO CROSSCLAIMS, ORIGINAL CROSSCLAIMS OF DEFENDANT PHARMA HOLDINGS US, LTD. AGAINSTDEFENDANTS MEDS DIRECT OF NY, LLC, MEDS DIRECT RX OF TN, LLC, AND MEDS DIRECT RX OF FL, LLC, AND THIRD PARTY COMPLAINT AGAINST GOOD SHEPHERD PHARMACY, INC., NEW HOPE PHARMACY, INC. D/B/A MEDS DIRECT RX OF CA, KEVIN SINGER, AND PAUL LEIGHT, on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

**SEE ATTACHED SERVICE LIST**

☐ **(BY MAIL)**: I deposited such envelope in the mail at Dallas, Texas with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Dallas, Texas, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(VIA OVERNIGHT MAIL)**: I am "readily familiar" with the firm's practice of collection and processing correspondence for overnight delivery. Under that practice it would be deposited in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence.

☐ **(BY PERSONAL SERVICE)**: I caused such envelope to be delivered to a commercial messenger service with instructions to personally deliver same to the offices of the addressee as shown on the attached mailing list on this date.

☐ **(BY ELECTRONIC MAIL)**: By transmitting a true copy thereof to the electronic mail addresses as indicated below.

☐ **(BY FACSIMILE)**: By transmitting an accurate copy via facsimile to the person and telephone number as stated.

☒ **(BY CM/ECF SERVICE)**: I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on May 11, 2016, at Dallas, Texas.

*/s Elizabeth K. Stepp*
Elizabeth K. Stepp

1

<u>**SERVICE LIST**</u>

***Enteral Products, LLC, et al. vs. Meds Direct Rix of NY, LLC et al.***

**Case No. 2:16-cv-916 RGK (RAOx)**

Devin Michael Senelick
Hooper Lundy and Bookman PC
1875 Century Park East Suite 1600
Los Angeles, CA 90067-2517
dsenelick@health-law.com

Jonathan Shin
Hooper Lundy and Bookman PC
1875 Century Park East Suite 1600
Los Angeles, CA 90067-2517
jshin@health-law.com

Hamilton Arendsen
ARENDSEN CANE LLP
550 West "C" Street, Suite 1150
San Diego, CA 92101
harendsen@arendsencane.com

Elizabeth K. Stepp
Oberheiden Law Group PLLC
5710 LBJ Freeway Suite 120
Dallas, TX 75240
eks@federal-lawyer.com

PROOF OF SERVICE/SERVICE LIST